Next case on this women's docket is the case of Nelson Development Court v. Michael Wenzel. We have Mr. Thomas Mag for the appellant, and we have Mr. Greg Stewart for the athlete. And you may proceed, Mr. Mag, when you're prepared to do so. Thank you, Your Honor. May it please the Court, Counsel. My name is Thomas Mag, and I represent Nelson Development Court. This is a relatively simple appeal. The primary issue, in fact, the only issue that plaintiff sets forth in their appellate brief is whether or not they set forth a prima facie case, a few points of damages sufficient to not necessarily win the case, but to allow the fact finder, in this case the judge, to weigh the evidence and decide the case. Very similar standard of review to a summary judgment motion. The trial court, Judge Stanley, found several different times, because there was some argument back and forth because it probably wasn't very clear to the parties exactly what his ruling was at the time, but the crux of it was that there was insufficient evidence that any lines were cut, water lines, underground lines, and so that the court understands this is an oil production property. It's also farmland, and there are pump jacks and various oil production equipment on this, what is otherwise farm ground. Much of this is underground. Certainly you see the pumps above ground pumping when they're pumping, but there's more to an oil production system than just the above ground pump jacks. A detailed schematic of what is underground is contained in Plaintiff's Exhibit 18, which is in the record. And the testimony in this case, which is uncontradicted, is what's in Plaintiff's Exhibit 18, the schematic, is what is in fact underground on this property. The uncontradicted evidence is that the defendant, Mr. Wetzel, did what's called tiling on this property. Tiling, as I understand it, involves taking a post and dragging it approximately four feet underground. The end result, anything that's in that way is ipso facto destroyed. If you take a tractor and a steel post and drag it through any sort of lines, wires, it can't help but destroy it. If nothing else, it's at least an inference that equipment was destroyed. The trial judge, following plaintiff's case in chief, the plaintiff moved for judgment as a matter of law, frankly not expecting it to be granted, because there was contradictory evidence back and forth to some extent, but it's what good attorneys always do. And following argument, Judge Stanley denied my motion for verdict as a matter of law and found no prima facie evidence of substantial portion of plaintiff's case in chief. This without even a motion from the defendant. But you're not raising the fact that the trial judge's sua sponte may have raised it because of the point you then said I was going to do that. Sure. I'm just describing the history of how it got there. I make no claim that we were prejudiced because of the procedure involved in getting there. It is the simple fact that ultimately Judge Stanley found no prima facie case on underground water lines, production lines and electrical lines. The uncontradicted case or the uncontradicted evidence in this case is that the defendant, Mr. Wetzel, admitted that in December of 2005, persons under his control and direction tiled the property. Mr. Nelson testified that this tiling would have destroyed all of his equipment that was underground. The schematic detailed in very good detail sufficient to actually allow equipment to be accessed, repaired and replaced underground because it's all laid out there in black and white exactly what was there. So there's no speculation as to what was underground. Give me the context of the judge's comment in speaking to the lines being cut that he said chances are they were. Chances are they were, but we can't speculate. We have to know. So we're not going to. So he didn't prove a prima facie case. That's what he said. And if you actually look at his written order, and I believe it's paragraph three of his written order, he restates again that there was no prima facie case made on these points. Counsel is. Yes. The statement would have destroyed the water production and electric lines. Is that an opinion? And if it's an opinion, is it an expert opinion? I do not believe it's an opinion. I believe it's a statement of fact based upon the witness's knowledge of what was there. I mean, if you park a car next to a tree and you know that the tree has fallen towards the street, you don't need to opine that it would have hit the car if you see where the tree fell and you know there was a car there. That's not an opinion. That's a fact. That's above ground. That's above ground. Not if the tree is so big that the leaves cover the car. Okay. So, again, exhibit 18. It's in the record. Details exactly what's underground. Mr. Wetzel admits he had other people tile it under his direction and control. Mr. Wetzel admits that he tiles his property. Mr. Nelson testified that this would have destroyed all his equipment underground and he couldn't use what was underground. Certainly Judge Stanley could have disbelieved some of this testimony and ultimately ruled for the defendant on these points. But that's not what he did. He said that there was no evidence sufficient to make a prima facie case. And if you look through the record and it's cited in the brief over and over again, no judgment contrary to this could stand. The written order says prima facie case. Under a 5-2-11 argument or motion, what's supposed to happen is the first analysis is whether or not a party has made a prima facie case. Counsel is going to argue most likely, as they did in their brief, that the second part of the prong is that you weigh the evidence and can disregard some of the evidence as part of the weighing process. That's true once you get past the issue of have you made a prima facie case. So what Judge Stanley would have had to do to get to the point of weighing the evidence is say, I find that the plaintiff has made a prima facie case on all these points. There's sufficient evidence for me to enter a judgment and play in his favor on all these points. But I disbelieve this part. I disbelieve that part. But that's not what he did. He simply said, you don't have the evidence. You don't get to go forward on this. He didn't weigh any evidence. Repeatedly, in every way imaginable, he said that there's no prima facie evidence on any of these points. Thus, you have the same analysis as you have on a summary judgment motion. Is there sufficient evidence, one way or the other, to get to whether or not you get to decide the facts? All we're saying is there's sufficient evidence for the court to decide whether or not plaintiff's claims are true. The circuit court found there wasn't sufficient evidence. There is. What's your position on the defense's claim of abandonment? The claim of abandonment is that there was sufficient evidence, I think, that probably could go either way. Judge Stanley weighed that evidence. He made his decision, which is supported by the evidence. While he could have probably ruled the other way based on the evidence, he analyzed the evidence, I believe properly applied the law. I think that based on the standard of review, that's a non-starter in this court. Unless there's any additional questions. Thank you. Thank you, Your Honor. May it please the court, counsel. My name is Greg Stewart. I'm from Congrenelli Professional Corporation in Karma, Illinois. We represented throughout these proceedings the defendant, Michael J. Wenzel. Mr. Wenzel is a farmer. With all of the floods we've had in southern Illinois and a nice day like this, Mr. Wenzel is farming today. Otherwise, he would be with you. In our brief, we've set forth the basic positions of the parties and why we believe that Judge Stanley was correct in his ruling on our motion for judgment at the close of this bench trial of the plaintiff's case. And why we believe that Judge Stanley was incorrect in ruling the property was not abandoned. But I want to start by framing the issues as they were pled. And I start this in our brief. Now, this was an LM case. So it had different rules on discovery. And the plaintiff, Nelson Development Corporation, alleged that it had an oil and gas lease called the Hicks lease. That within the Hicks lease, there was a 40-acre tract of ground which the defendant and his wife, Mr. Wenzel, came to own the surface of. And that at some point in time, the defendant, Mr. Wenzel, had damaged certain personal property of Nelson Development Corporation, which were various items that were listed as an electrical distribution system, electric lines, poles, disconnects, panels, anchors, and related equipment. And further, that there was subsurface pipe and appurtenant fixtures and equipment dealing with this lease. Now, the plaintiff presented its case and basically said the following. Here's a schematic of underground equipment that is on certain parcels of real estate within my lease. It's buried three to four feet underground. And you must have damaged it. And the reason for their statement was this issue of tiling. And tiling, which I assume most of you would understand what happens is you dig a trench in certain proximities to one another within a field, and you put corrugated pipe in it to help drain the surface of the ground. As water seeps through, it drains into these pipes and it drains off the ground. None of that evidence was presented in court, but I'm indicating to you that's what happens when you tile ground. The schematics show that out on this property, there are certain things that are buried anywhere between three and six foot deep in different configurations. The tiling was done maybe to adapt the four feet according to the evidence, which we cite in the record. It was not indicated how the tiling was performed, whether it was diagonally through this field, whether it was parallel to the boundaries of the field. There was no testimony about the nature of the tiling that was done. Was it one cut through the field? Was it multiple cuts? The record indicated nothing about the tiling or the nature of the tiling that was done, other than to say it was done up possibly to a depth of four feet. The schematics in the testimony indicated that the matters that the plaintiff claimed to own were a depth of three to six feet potentially within this field. Why didn't they just ask the defendant when they were testifying, since he said he was out there when there was tiling, did you pull up anything? Did you hit anything? The question was never asked. So what we have is unknown directional tiling in a field, a schematic, and a conclusion that was reached by the plaintiff and its counsel that, well, if you tile this field, you must have hit our equipment. That was their case. Now, the problem with that and the reason why we believe in great substance that Judge Stanley ruled the way that he did in our motion for judgment at the close of plaintiff's case was that the plaintiff testified, and we cite this within our brief, we cite you to the specific provisions of the record. The plaintiff testified that he went out to this lease. Every three to four months, he fired up this electrically powered well. He pumped it to circulate chemicals such that the well, as it pumped, flowed liquids through the pipes that were underground. It utilized the underground electric to start the pump jack, and it flowed liquids into these tank batteries. He did that every three to four months just to keep the equipment operational. How do you do that when you tiled in 2005 and it destroyed all your electrical lines underground and your flow lines that take the liquids from the pump jack and move them underground to your tank battery? You can't. You can't have it both ways. That is why it is the position of the defendant. When Judge Stanley ruled, Judge Stanley didn't indicate within his ruling that on the particular matters he was ruling upon, the plaintiff failed to present a prima facie case. He said there was insufficient evidence, and I've cited his ruling to you within our brief verbatim. The first time that the word prima facie case was utilized in this case was when Mr. Mag tendered his proposed order to the court, which came after Judge Stanley issued a rule to show cause to Mr. Mag to produce the order because it had not been produced pursuant to his record sheet entry. Upon presentation, the judge entered it, but Judge Stanley did not rule. There was a failure to produce a prima facie case. This is what Judge Stanley ruled is set forth in our brief at page 8, and I want to quote. Judge Stanley said, There is insufficient evidence to support any adverse ruling on the defendant as it relates to the electrical system except as to one utility pole, and then he goes on. Tell me about that utility pole. The judge said there was one pole removed, and he awarded damages for that. You contend that we shouldn't have even done that. Agreed, and the reason for that, Your Honor, is because we say that utility pole was abandoned and therefore not the property of the plaintiff to claim damage due. That was solely our position? Abandoned. And to go a little further on that, Your Honor, the reason why we made that position, and we've cited clearly in the record, the plaintiff testified it did not produce the lease after the mid-'90s. We had witnesses come before the court and testify as to, When you pump this pump jack, the liquids flow underground into a tank storage facility so that the oil can be removed from the property at a later date. Witnesses came in and said the tops of these tanks were rusted out. There were holes in the sides. Now, Mr. Nelson testifying for the plaintiff, the corporation he owns, disputed that, but we brought in a Mr. Marshall who lived within 200 yards of this lease property for years. Saw it every day. Testified those tanks were rusted out on the top. The tenant farmer that farmed the ground said, Oh, yeah, I'm aware of these tanks. Seen them for years. They're rusted out. They have holes in the side of them. Couldn't hold liquids. So with the testimony from the plaintiff that he hadn't produced the lease since the mid-'90s, in this case, we're now in 2010. That's a period of almost 15 years. The lease had not been produced. But the abandonment, which is the issue I'll get to now, abandonment is the intentional relinquishment of an owned right and property. You can have abandoned property on an oil and gas lease that is an effective lease. It's just not been used forever. It's junk. And one thing we brought before Judge Stanley at this bench trial was, just a few days before the trial commenced, plaintiff went out and cut up the tanks that we said had holes in, tops, bottoms, cut them up and took them off. Now, where I come from, that's called scrapping metal. And when you scrap metal. Let me go back to this abandonment. Where does it end up in the record of abandonment? Did the plaintiff ever testify, I didn't want this property anymore? Justice Waxman, the answer to that is no. He did not express his intent. But in the record, we cite the testimony of Mr. Marshall, who testified about the tanks and the production facilities having holes in them. We testified, Mr. Wenzel testified about where the hole was. There was nothing attached to it. It was sitting beside the pump jack. Hadn't been used in years. And that the lease road, which was the other element of damage, had not been used for years and was just basically grass and a little dirt roadway. And that he had farmed over it. And it had not been used for years to access this property for any oil and gas operations. We've cited the record. Hopefully that answers your question. So, I think the court can, based upon the evidence that was presented, see that it was, in fact, the intent of the plaintiff to abandon this property and not to utilize it anymore. Why else do you cut up the tanks? In the end result, this was a very garden variety personal property damage claim case, which turned into a defense which we set forth in our pleading of, well, if you don't own it anymore, you can't be damaged on it, which is the abandonment issue. We disagree with plaintiff about the standard of review. We do not believe the record reflects that Judge Stanley ruled that there was a failure to present a prima facie case which leaves the court with a de novo review under the authority cited by the plaintiff. We cited the Tibbetts case. We believe Tibbetts is an appropriate standard here because, in fact, Judge Stanley said there was insufficient evidence. Insufficient evidence. And if you look at the rulings of Judge Stanley, which we have specifically set forth in our brief, the rulings indicate that Judge Stanley did, in fact, weigh the evidence because we specifically went over Section 2-1110 of the Code of Civil Procedure. It was discussed at length during the argument. And 2-1110 states the court shall weigh the evidence presented. And that's why we believe that Judge Stanley in making his ruling said, well, maybe it was the lines were cut and maybe it could have, well, they were cut by timing, but I can't speculate to that. You have to present evidence which is somehow credible. I wish he would have went on and said when he ruled that he didn't, that, you know, and Mr. Nelson also testified he kept operating this property, pumping this pump jack, running liquids through. He couldn't have cut the lines to the electrical. You couldn't have pumped the well. He couldn't have cut the flow lines because you said you were pumping liquids into the tank. Couldn't happen. But we have the record that we have. We have the ruling of the court. We ask you to affirm Judge Stanley's ruling on our 2-1110 motion. We ask you to reverse. We ask you to find that the property was, in fact, abandoned, and therefore there should have been no damage award in this particular case. If you have any questions, I would be glad to answer them. But a garden variety case from the circuit court, but you'll probably see more oil and gas cases coming with the prize of oil. Thank you. Thank you very much. I would like to make one note on the abandonment issue, and that is even if the property was abandoned, arguendo, it wouldn't go back to Mr. Wentzel, the ownership rights and whatever property that is. It would go to the mineral owner. The record in this case shows that the mineral owner ratified the lease. Thus, the mineral owner, to the extent they had any claim whatsoever to the property, revested it back in Nelson Development, assuming it ever left. Thus, even if it could have theoretically been abandoned, factually the only person in the world that would have standing to make that claim, not Mr. Wentzel, gave it back to Nelson Development. So abandoned property can be revested. To the extent it could have possibly been abandoned, it was revested. As far as the Tibbetts case goes, I acknowledge the Tibbetts case is out of this district. If you read Tibbetts, it actually holds the same matter of law as the cases cited by plaintiffs in their brief. Just Tibbetts was factually different because in Tibbetts, the judge actually did find, as I recall, that a prima facie case was found and then went on to weigh the evidence. In this case, the judge said no prima facie case and thus did not weigh the evidence. Unless there's any further questions? Thank you.